UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Max S. Graves, Jr.,

          Plaintiff,

vs.

Mark Lanasa and Michael Meath,
in their individual capacities as
officers of the Minneapolis Police
Department, and the City of Minneapolis,

          Defendants.

COMPLAINT

JURY TRIAL DEMANDED
UNDER FRCP 38(b)

---

For his Complaint, plaintiff Max S. Graves, Jr. ("Graves") hereby states and alleges as follows:

1. This is an action for money damages for injuries sustained by Graves as a result of the use of excessive force in violation of his constitutional rights by the individual defendants. Plaintiff Graves also asserts a claim against the City of Minneapolis pursuant to *Monell v. Department of Social Servs.*, 436 U.S. 658 (1978).

2. Graves brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth Amendment of the United States Constitution, and 28 U.S.C. §§ 1331 and 1342(3). The aforementioned statutory and constitutional provisions confer original jurisdiction of this Court over this matter.

3. The amount in controversy exceeds $75,000, excluding interest and costs.

4. Graves is, and was at all times material herein, a citizen of the United States and a resident of the State of Minnesota. He is a 26 year-old African American, who at the time of the subject incident was a full-time student at St. Paul College.

5. Defendant Mark Lanasa ("Lanasa"), upon information and belief, was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota, duly appointed and acting as an officer of the 1st Precinct of the Minneapolis Police Department.

6. Defendant Michael Meath ("Meath"), upon information and belief, was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota, duly appointed and acting as an officer of the 1st Precinct of the Minneapolis Police Department.

7. Defendant City of Minneapolis is a municipality duly incorporated under the laws of the State of Minnesota.

8. On the evening of October 3, 2008 and into the morning of October 4, 2008, Graves and several of his friends, including his twin brother, were enjoying a night out in downtown Minneapolis.

9. At or around 2:00 a.m. on October 4, 2008, Graves and his companions were on 1st Ave. N. after leaving Pizza Luce when they encountered a large crowd of people on the sidewalk. Upon information and belief, these people were patrons exiting a nearby bar, which was closing.

10. While making his way through the crowd, Graves saw a fight breaking out close to his location and then observed a mounted police officer move onto the sidewalk. As Graves stepped back and away from the mounted police officer, he saw Lanasa and Meath for the first time as they approached from behind the mounted unit.

11. When Lanasa saw Graves, Lanasa stated "I saw what you guys were over there doing, come here." As Lanasa and Meath advanced towards Graves, Lanasa put on a pair of gloves.

12. Lanasa then attacked Graves, beating him with his fists and feet. At no time did Graves fight back against Lanasa.

13. In his report, Lanasa admittedly punched Graves in the face with his fist, causing Graves to "slump forward."

14. While being attacked, Graves asked Lanasa and Meath what he had done wrong, but he received no reply. At no point did Lanasa or Meath tell Graves that he was under arrest or tell him of what, if anything, he was accused.

15. Lanasa then admittedly placed Graves in a chokehold until Graves lost consciousness.

16. Upon information and belief, Lanasa continued to beat Graves while he was unconscious.

17. Upon regaining consciousness, Graves discovered that he had been hogtied with his legs and arms tied together behind his back, which caused him a great deal of pain and angst.

18. Although he was hogtied and therefore completely under control, Graves was then tased multiple times. Upon information and belief, either Lanasa or Meath tased Graves between three and six times.

19. After being tased, Graves continued to question why this was happening. Although Graves was still hogtied, Lanasa repeatedly applied chokeholds to Graves.

20. Graves was then thrown into the back of a police van and taken for booking.

21. The force that defendants Lanasa and Meath used on Graves was unauthorized, excessive, and constitutionally improper.

22. Upon information and belief, the force defendants Lanasa and Meath used on Graves was malicious and for the very purpose of causing pain and/or injury.

23. At Regions Hospital on the night following the incident, the examining physician in the Emergency Department noted "significant swelling of the right side" of Graves' face, "black eyes on both sides," "subconjuctival hematoma on both eyes," and "obvious signs of tazer [sic]" on his chest.

24. While at Regions, Graves also received a CT scan of his head and neck. The scan revealed no intracranial injuries, but did show "soft tissue swelling [on] the right [side of Graves'] face consistent with trauma."

25. The examining physician determined that Graves had suffered a head injury, possibly a concussion, and discharged him that evening with instructions to visit a traumatic brain injury clinic and an ophthalmologist within a week.

26. Since the assault occurred on October 4, 2008, Graves has incurred special damages, including medical expenses in excess of $5,000, as a direct and proximate result of the excessive use of force, unreasonable seizure and other violations of his constitutional rights by the individual defendants.

27. Prior to Lanasa attacking Graves and choking him into unconsciousness, Graves had made no physically aggressive move toward Lanasa or Meath whatsoever.

28. Upon information and belief, defendants Lanasa and Meath and other officers on the scene, including James Loveland, tried to cover up Lanasa's and Meath's misconduct by filing false and misleading police reports in this matter. The reports contain several materially false claims and statements regarding Graves' conduct, including that he assaulted an unidentified female and that he resisted arrest. Additionally, the reports wholly omit any mention of Graves being hogtied and repeatedly tased.

29. Graves was charged with obstructing legal process with force but that charge, and all charges against him, was dismissed.

30. Graves never physically threatened any of the officers, including defendants Lanasa and Meath.

31. The severity of any potential crime at issue was minor, as Graves was suspected of obstructing legal process or, at worst, an unproven and uncharged assault.

4

32. Graves did not pose an immediate threat to the safety of the defendant officers or others at the time he was beaten, bound and tased.

33. Graves did not attempt to evade arrest by flight and did not actively resist arrest.

34. Finally, all of the police officers, including defendants Lanasa and Meath, were armed while Graves had no weapon.

35. Upon information and belief, the City of Minneapolis has failed to date to take any disciplinary action against either of the defendant officers as a result of their conduct in this incident.

36. Due to the fact that the City of Minneapolis has failed to discipline its police officers for use of excessive force, including head strikes, these officers do not feel constrained from using excessive force, knowing that the department will not investigate their actions adequately nor impose negative sanctions on them.

37. The effect of the department's failure to discipline has led other Minneapolis police officers to believe they could (as the defendants did) get away with using excessive force.

38. Plaintiff demands a jury trial as to all issues of fact herein.

## COUNT ONE
## 42 U.S.C. § 1983 – FOURTH AMENDMENT VIOLATIONS
## BY DEFENDANTS LANASA AND MEATH

39. Plaintiff realleges the allegations contained in paragraphs 1-38 herein against defendants Lanasa and Meath.

40. By the actions described above, defendants Lanasa and Meath, under color of state law, violated and deprived Graves of his clearly established and well-settled civil rights to be free from the use of excessive force.

41. Defendants Lanasa and Meath subjected plaintiff to this deprivation of rights either maliciously or acting with reckless disregard for whether Plaintiff's rights would be violated by these actions.

42. As a direct and proximate result of the acts and omissions of defendants Lanasa and Meath, Graves suffered injuries, was forced to endure pain and mental suffering, and was thereby damaged in an amount yet to be determined, but believed to be well in excess of One Hundred Thousand Dollars ($100,000).

43. Punitive damages are available against defendants Lanasa and Meath and are hereby claimed as a matter of federal common law, *Smith v. Wade*, 461 U.S. 30 (1983), and, as such, are not subject to the differing pleading standard set forth in MINN. STAT. § 549.20.

44. Plaintiff is entitled to recovery of his costs, including reasonable attorney fees, under 42 U.S.C. § 1988.

## COUNT TWO
### CIVIL RIGHTS VIOLATION BY DEFENDANT CITY OF MINNEAPOLIS

45. Plaintiff realleges the allegations contained in paragraphs 1-44 herein against defendant City of Minneapolis.

46. Defendant City of Minneapolis intentionally, knowingly, recklessly, or with deliberate indifference to the rights of citizens, failed to supervise, instruct, and train, including through proper discipline, defendants Lanasa and Meath to refrain from using unreasonable force.

47. Before October 4, 2008, defendant City of Minneapolis, with deliberate indifference to the rights of citizens, initiated, tolerated, permitted, failed to correct, promoted, and ratified a custom, pattern and practice on the part of its police personnel, including defendants Lanasa and Meath, of using excessive force.

48. As of October 4, 2008, defendant City of Minneapolis maintained a custom and practice of deliberate indifference to use of excessive force by its officers.

49. Defendant City of Minneapolis, directly or indirectly, under color of state law, approved or ratified the unlawful, malicious, reckless, or wanton conduct of defendants Lanasa and Meath.

50. As a direct and proximate result of the acts and omissions, systematic flaws, policies and customs of defendant City of Minneapolis, Graves suffered injuries, was forced to endure unnecessary pain and mental suffering, and was thereby damaged in an amount yet to be determined, but believed to be well in excess of One Hundred Thousand Dollars ($100,000).

51. Plaintiff is entitled to recovery of his costs, including reasonable attorney fees, under 42 U.S.C. § 1988.

WHEREFORE, plaintiff Max S. Graves, Jr. prays for judgment against the defendants as follows:

1. As to Count One, a money judgment against defendants Lanasa and Meath for compensatory damages in an amount in excess of $100,000 and punitive damages in an amount to be determined by the jury, together with costs, including reasonable attorney fees, under 42 U.S.C. § 1988 and prejudgment interest;

2. As to Count two, a money judgment against defendant City of Minneapolis for compensatory damages in an amount in excess of $100,000, together with costs, including reasonable attorney fees, under 42 U.S.C. § 1988 and prejudgment interest;

3. For an order mandating additional training for Minneapolis police officers to counteract previous instruction and for remediation on use of force, including but not limited to the appropriate use of tasers and use of head strikes; and

4. For such other and further relief as this Court deems just and equitable.

Dated: 6/9/10.

FLYNN, GASKINS & BENNETT, L.L.P.

*/s/ Robert Bennett*

Robert Bennett, #6713
Ryan O. Vettleson, #312915
333 South Seventh Street, #2900
Minneapolis, MN 55402
Telephone: 612-333-9500
Attorneys for Plaintiff

8